**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GABRIEL GILMORE,

                              Plaintiff,

            v.                                                9:18-CV-463
                                                              (GLS/DJS)

BLAIR,

                              Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

GABRIEL GILMORE
04-B-387
Plaintiff, _Pro Se_
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. LETITIA JAMES                          NICHOLAS L. ZAPP, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

         Plaintiff, presently an inmate in the custody of the New York State Department

of Corrections and Community Supervision ("DOCCS"), brings this _pro se_ action

pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights.  Dkt.

No. 1, Compl. Defendant has now filed a Motion for Summary Judgment seeking dismissal of the Complaint. Dkt. Nos. 102 & 103. Plaintiff opposes the Motion. Dkt. No. 115. For the reasons which follow, the Court recommends that the Motion be granted.

## I. BACKGROUND

The Complaint originally named multiple Defendants. *See generally* Compl. In a June 5, 2018 Decision and Order, the District Court dismissed all claims other than a First Amendment retaliation claim against Defendant Blair. Dkt. No. 13. The gravamen of the retaliation claim is that Defendant issued a misbehavior report to Plaintiff falsely accusing him of abusing facility health services procedures and then played a role in tampering with Plaintiff's food. *Id.* at p. 18.

During the time period relevant to Plaintiff's allegations, roughly September 2016 through January 2017, Plaintiff was housed at Coxsackie Correctional Facility. Dkt. No. 102-3, Blair Decl. at ¶ 3; Dkt. No. 115-3 at ¶¶ 2-3.[1] During this time, Defendant Blair was employed as a Registered Nurse at Coxsackie. Blair Decl. at ¶ 1. Though the parties dispute their frequency and legitimacy, the record establishes that during this period Plaintiff had a documented history of numerous medical complaints. Blair Decl.

---

[1] Plaintiff has submitted numerous documents in opposition to the Motion which are referred to throughout this opinion by reference to their docket number.

at ¶¶ 13-15; Dkt. No. 103, Pl.'s Med. Records; Dkt. No. 115-4 at ¶¶ 8 & 13.  This included requesting emergency sick call on numerous occasions that medical staff at Coxsackie deemed unwarranted.  Blair Decl. at ¶ 15.

On November 29, 2016, Plaintiff again requested emergency sick call and according to Nurse Blair raised issues other than those made in the sick call request.  *Id.* at ¶ 16; Pl.'s Med. Records at p. 14.  As a result, Defendant issued Plaintiff an inmate misbehavior report.  Blair Decl. at ¶ 17 & Ex. B.  Following a hearing, Plaintiff was found not guilty of the charges lodged in the misbehavior report.  Dkt. No. 102-6, Pl.'s Dep. at p. 33.

Plaintiff also alleges that his food was tampered with on January 23, 2017.  Specifically, he claims that he was given a food tray by a corrections officer who he cannot name and that a medication to which he had previously had an adverse reaction had been placed in the food.  Pl.'s Dep. at pp. 35-41.  Defendant denies any role in tampering with Plaintiff's food.  Blair Decl. at ¶¶ 20-21.

Defendant has offered evidence from two DOCCS officials that Plaintiff filed no grievance regarding the two incidents of alleged retaliation at issue in this case.  *See generally* Dkt. No. 102-4, Hale Decl.; Dkt. No. 102-5, Seguin Decl.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

4

of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendant seeks summary judgment on three grounds: (1) Plaintiff's alleged failure to exhaust available administrative remedies; (2) on the merits of Plaintiff's

retaliation claim; and (3) on the ground of qualified immunity. The Court considers each argument in turn.

## A. Exhaustion under the Prison Litigation Reform Act

### 1. The Grievance Process

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies

available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP").  First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.  7 N.Y.C.R.R. § 701.5(b).  An inmate must submit a grievance "within 21 calendar days of the alleged occurrence."  *Id.* at § 701.5(a).  An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g).  The IGRC reviews and investigates the formal complaint and then issues a written determination.  *Id.* at § 701.5(b).  Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision.  *Id.* at § 701.5(c).  Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination.  *Id.* at § 701.5(d).  Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court.  *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8.  Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor.  *Id.* at § 701.8(a).  The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a *bona fide* case of harassment.  *Id.* at §§ 701.8(b) & (c).  If the superintendent determines the grievance to be a case of harassment, he must render a decision within 25 days; the grievant may then appeal that determination to CORC.  *Id.* at §§ 701.8 (d)-(h).

### 2. Plaintiff's Failure to Fully Exhaust his Claims

Here the record before the Court establishes that no timely grievance was filed regarding either Defendant's alleged retaliation in November 2016 or alleged involvement in food tampering in January 2017.  The records of Coxsackie Correctional Facility indicate that no grievance was filed regarding either claim.  Hale Decl. at ¶ 12.[2] Records from CORC further demonstrate that no appeal to CORC was ever taken of any grievance related to these two claims.  Seguin Decl. at ¶¶ 13-18.  This evidence is

---

[2] Plaintiff's opposition makes much of a claim that Hale's Declaration is untrue because he did not work at Coxsackie Correctional Facility at the time of the events in question.  *See* Dkt. No. 115-2 at ¶¶ 2-4.  The Court notes that Hale's Declaration does not claim that he worked at Coxsackie at this time and is explicitly offered based on his knowledge of DOCCS procedure and a review of records.  Hale Decl. at ¶¶ 1-2.

sufficient to establish that no grievance was filed regarding these claims. *Powell v. Schriro*, 2015 WL 7017516, at *7 (S.D.N.Y. Nov. 12, 2015).

Apart from claims that his efforts to file a grievance may have been interfered with, a claim that will be discussed below, Plaintiff's opposition papers do not offer evidence that a timely grievance regarding either the November 2016 or January 2017 incidents was filed. As noted above, DOCCS regulations require a grievance be filed within 21 days of the event giving rise to the grievance. *Williams v. Priatno*, 829 F.3d 118, 119 (2d Cir. 2016) (citing 7 N.Y.C.R.R. § 701.5(a)(1)). At his deposition, Plaintiff testified that he only "started trying to make complaints" on January 23, 2017. Pl.'s Dep. at p. 33. He offered no specifics about the nature of those complaints, however. *Id.* The earliest date offered by Plaintiff as to any written action regarding the events at issue here appears to be a May 2, 2017 letter to the New York State Office of the Inspector General. *See* Dkt. No. 115-1 at p. 10. Plaintiff's extensive opposition papers show no earlier attempt by him to make DOCCS officials aware of these alleged incidents. In fact, the earliest date offered by Plaintiff regarding written communication with DOCCS appears to be Plaintiff's June 2017 grievance regarding medical care which mentions neither of these incidents nor Defendant Blair. Hale Decl. at Ex. A. There is, therefore, simply no evidence of a timely grievance regarding these incidents

as required to exhaust remedies under the PLRA. *Reeder v. Uhler*, 2019 WL 4686351, at *3 (N.D.N.Y. Sept. 26, 2019) (citing Woodford v. Ngo, 548 U.S. at 83).

Plaintiff's opposition does establish that he wrote numerous complaints to prison officials and others outside of DOCCS. Dkt. No. 115-1 at pp. 9, 10, 14, & 15. "Generally, 'the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.'" *Berman v. Durkin*, 2017 WL 1215814, at *7 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017) (quoting *Timmons v. Schriro*, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015)) (citing cases); *Salmon v. Bellinger*, 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), *report and recommendation adopted*, 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) ("Letters sent outside of the grievance process . . . are insufficient to satisfy the exhaustion requirement")); *see also Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.'") (internal quotations, citations, and alterations omitted). Those letters, therefore, did not exhaust Plaintiff's administrative remedies.

The exhaustion requirement is designed to permit prison officials to address inmate concerns before the commencement of litigation. *Jones v. Bock*, 549 U.S. 199, 204 (2007). An inmate must exhaust the entire DOCCS three-step process to exhaust a

10

claim under the PLRA. *Seuffert v. Donovan,* 2016 WL 859815, at *4 (N.D.N.Y. Feb. 5, 2016), *report and recommendation adopted*, 2016 WL 796090 (N.D.N.Y. Feb. 26, 2016). Here, the facts establish that Plaintiff proceeded to this Court before fully exhausting the available DOCCS procedures. He thus failed to fully exhaust.

*3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused*

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019).

11

Plaintiff clearly argues that he should be excused from the exhaustion requirement. *See generally* Dkt. No. 115-1. Plaintiff has filed many grievances while an inmate in DOCCS' custody. *See* Sequin Decl. at Ex. A. "This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here." *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018); *see also Gonzalez v. Coburn*, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it.").

Plaintiff's opposition does raise an allegation that his attempts to file grievances were somehow thwarted by DOCCS personnel. Dkt. No. 115-1. His conclusory allegations in this regard, however, are insufficient to raise a question of fact. *Richard v. Leclaire*, 2019 WL 4233184, at *3 (N.D.N.Y. Sept. 6, 2019); *Aviles v. Tucker*, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016). Plaintiff alleges, for example, that he attempted to send an appeal by certified mail to Karen Bellamy, then a DOCCS official at CORC, but that facility staff refused to process his mail. *Id.* at p. 9. This accusation,

made in a memo addressed to Ms. Bellamy, makes no reference to having filed a grievance at the facility level, however. *Id.* The Court also notes that while Plaintiff has a copy of this memo and many other correspondence dated well after the incidents at issue here, *id.* at pp. 7-14, he has not provided the Court with a copy of any grievance, grievance decision, or grievance appeal related to those issues. *See*, *e.g.*, *Gibbs v. Gadway*, 2019 WL 5191506, at *5 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020) (conclusory claim unsupported by copies of grievances allegedly filed subject to dismissal) (citing cases); *Blake v. Porlier*, 2019 WL 7484052, at *5 (N.D.N.Y. Oct. 4, 2019), *report and recommendation adopted*, 2020 WL 58613 (N.D.N.Y. Jan. 6, 2020) (same). Nor does Plaintiff identify the date any grievance was filed or anything else about the process that would render his claims less conclusory.

For these reasons, the Court recommends that the Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust his administrative remedies. The Court will, however, also address the remaining grounds for Defendant's Motion.

## B. Merits of Plaintiff's Retaliation Claim

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the

protected conduct and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). This is true because given the nature of a retaliation claim they are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

Plaintiff claims Defendant took two retaliatory actions against him: the issuance of a misbehavior report and having something placed in his food to make him ill. Under the applicable standards neither claim survives summary judgment.

### *1. Misbehavior Report*

Defendant issued a Misbehavior Report to Plaintiff on November 26, 2016, related to Plaintiff's abuse of facility emergency sick call procedures. Blair Decl. at ¶ 17 & Ex. B. Plaintiff was found not guilty of the three charges set forth in the Misbehavior Report. *See* Compl. at pp. 18 & 67; Pl.'s Dep. at p. 33. Plaintiff claims

the report was issued to retaliate against him for his frequent requests for medical attention. Dkt. No. 115-4 at ¶ 17. Defendant denies any retaliatory motivation in issuing the report. Blair Decl. at ¶ 18. As to this claim, Plaintiff cannot establish either that he engaged in protected activity or that Defendant took adverse action against him. Accordingly, summary judgment is appropriate as to this claim.

Courts have not recognized a freestanding right to request medical attention as a protected activity sufficient to support a retaliation claim. *Ross v. Koenigsmann*, 2016 WL 11480164, at *17 (N.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016) (citing cases); *see also Brown v. White*, 2010 WL 985184, at *12 (N.D.N.Y. Mar. 15, 2010). Plaintiff's claim in this regard thus is insufficient to establish the first element of his retaliation claim.

Nor can Plaintiff establish an adverse action related to the issuance of the misbehavior report. In the context of inmate retaliation claims, adverse action is viewed objectively and requires the Court to ask whether the action taken with respect to the inmate "would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Courts have long recognized that if the alleged retaliation is not something that would deter an individual from exercising their rights, the alleged conduct is *de minimis* and "outside the ambit of constitutional

15

protection." *McFadden v. Friedman*, 2015 WL 5603433, at *9 (N.D.N.Y. Sept. 23, 2015).

The filing of a false misbehavior report that results in some form of punishment that cannot be labelled *de minimis* has been found sufficient to constitute adverse actions. *See*, *e.g.*, *Reed v. Doe No. 1*, 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (finding that the "filing of a false misbehavior report can qualify as an adverse action for the purposes of a First Amendment retaliation" where the report resulted in a fourteen-day term in keeplock confinement), *report and recommendation adopted*, 2012 WL 4486085 (N.D.N.Y. Sept. 27, 2012); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (N.D.N.Y. 2010) (finding that a misbehavior report that resulted in SHU confinement constituted an adverse action). However, the mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action. *Bartley v. Collins*, 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) (finding misbehavior report that resulted in plaintiff's temporary loss of privileges did not amount to adverse action but misbehavior report that resulted in keeplock confinement for ten days did). "Typically, courts require a showing of additional punishment above the filing of a misbehavior report to find an adverse action." *Vidal v. Valentin*, 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019); *see also Flynn v. Ward*, 2018 WL 3195095, at *10-11 (N.D.N.Y. June 7, 2018), *report and recommendation adopted*, 2018 WL 3193201

(N.D.N.Y. June 28, 2018) (same).  In this case, Plaintiff was found not guilty of the charges.  Pl.'s Dep. at p. 33.  There is no evidence he suffered any adverse consequence in the form of lost privileges or restricted confinement as a result of the report.  He, therefore, cannot show and indeed has not alleged an adverse action from the issuance of the misbehavior report.

### 2. Food Tampering Claim

As already discussed, Plaintiff has failed to adequately allege that he was engaged in protected activity.  *See* Point III(B)(1) *supra*.[3]  This retaliation claim also fails because he cannot establish a causal connection to Defendant.[4]

A retaliation plaintiff must establish a causal connection between a protected activity and an adverse action.  *Holland v. Goord*, 758 F.3d at 22.  But to survive dismissal Plaintiff "must advance non-conclusory allegations."  *Garcia v. S.U.N.Y.*

---

[3] To the extent Plaintiff's claim here alleges that the retaliation was motivated by his being found not guilty of the misbehavior report, that too fails to establish a protected activity that can serve as the basis for a retaliation claim. "Being found not guilty, however, is not protected activity, or for that matter, 'activity' at all, on plaintiff's part." *Taylor v. Fischer*, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012); *see also Davis v. Jackson*, 2018 WL 358089 at *10-11 (S.D.N.Y. Jan. 8, 2018) (same).

[4] The Court assumes without deciding that tampering with an inmate's food would satisfy the adverse action requirement.  *Compare Santos v. Keenan*, 2020 WL 2859202, at *14 (W.D.N.Y. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020) (food tampering "may be adverse action[]" *with James v. Mosko*, 2016 WL 8671478, at *6 (W.D.N.Y. July 22, 2016), *report and recommendation adopted*, 2017 WL 397474 (W.D.N.Y. Jan. 30, 2017) (conclusory allegation of food tampering insufficient to establish adverse action).

*Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106 (2d Cir. 2001).  In a summary judgment motion, this requires the non-movant to proffer "some tangible proof" of a causal connection and Plaintiff "may not rely on conclusory assertions of retaliatory motive." *Washington v. Cty. of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004).  Defendant Blair denies the allegation that he had any role in tampering with Plaintiff's food.  Blair Decl. at ¶¶ 20-21.  In the face of express denials on the part of Defendant of any role in the allegedly retaliatory events, the opposition to the Motion for Summary Judgment does not rise above such conclusory allegations and is insufficient to defeat the Motion.

Plaintiff states that his food was tampered with on January 23, 2017, by placing H.I.V. medication to which he had previously had an adverse reaction in his food.  Pl.'s Dep. at pp. 34 & 40-42.  The record, however, fails to raise a triable issue about Defendant's role in this alleged incident.  Plaintiff has no specific evidence that any medication was in fact placed in his food on the day in question.  His claim is based largely on the supposition that the unnamed officer, who Plaintiff says is a "bad" officer would not have given him a food tray absent some nefarious purpose.  *See id.* at pp. 35, 36, & 44.  He did not see anyone place anything in his food.  *Id.* at p. 44.  In fact, Plaintiff's deposition testimony could not specifically identify whether it was a corrections officer, Defendant, or another nurse at the facility who allegedly placed the

18

medication in the food. *Id.* at pp. 40-41. He alleges, without specific evidence, only that the three were "working as a team." *Id.* at p. 45.

As previously discussed, inmate retaliation claims can be "easily fabricated." *Dawes v. Walker*, 239 F.3d at 491. Courts, therefore, require more than conclusory allegations to support such a claim. Here, Plaintiff fails to offer evidence beyond speculation and theories of his own design. Plaintiff's "conclusory statements alone . . . fail to adequately provide this Court any factual specifics by which we could evaluate the plausibility of his claims." *Melecio v. Fischer*, 2011 WL 6987299, at *8 (N.D.N.Y. Sept. 27, 2011), *report and recommendation adopted*, 2012 WL 92846 (N.D.N.Y. Jan. 11, 2012).

For these reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### C. Qualified Immunity

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence

could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341.  Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

While the general right to be free from retaliation is well established, this Court has previously recognized that "there is no 'clearly established right' under the First Amendment for inmates to request medical attention." *Ross v. Koenigsmann*, 2016 WL 11480164, at *18 (N.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016).  Other courts have more recently continued to recognize that no such right is clearly established.  *James v. Gage*, 2019 WL 6251364, at *7 (S.D.N.Y. Nov. 21, 2019) ("a constitutional right to request medical attention is not clearly established") (citing cases).  Given the lack of a clearly established right Defendant could not have known that acting against Plaintiff, if he in fact did so, would constitute unlawful retaliation.  As a result, the lack of clearly established law finding a right to request medical treatment is an additional basis for granting summary judgment.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 102) be **GRANTED** and that the Complaint be **DISMISSED**; and it is

**ORDERED**, that Plaintiff's letter requests to submit additional documents in opposition to the Motion and for a conference (Dkt. Nos. 127 & 132) are **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  June 30, 2020
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

21